

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **LEAH GANN** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.: 2:22-cv-00066-NAD |
| | ) |
| **GEORGE C. WALLACE STATE** | ) JURY DEMANDED |
| **COMMUNITY COLLEGE** | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

COMES NOW Plaintiff, Ms. Leah Gann ("Plaintiff"), by and through her undersigned counsel of record, and files this Complaint against Defendant, Wallace State Community College ("Defendant"). As grounds for this Complaint, Plaintiff states the following:

### INTRODUCTION

1. This is a suit authorized and brought to secure protection of and to redress the deprivation of rights secured by Title VII of the Act of Congress known as the "Civil Rights Act of 1964," codified at 42 U.S.C. § 2000e et seq., as amended, ("Title VII"), and the Family Medical Leave Act of 1993, codified at 29 U.S.C. § 2601 et seq. ("FMLA").

## JURISDICTION AND VENUE

2. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1343, 2601 and 29 U.S.C. § 2617.

3. The unlawful employment practices alleged in this complaint were committed in Cullman County, in the Northern District of Alabama; therefore, Venue lies within the Northern District of Alabama, Northern Division, pursuant to 28 U.S.C. § 1391(b).

## ADMINISTRATIVE EXHAUSTION

4. On October 8, 2021, Plaintiff filed Charge of Discrimination No. 420-2021-00075 (the "Charge") with the Equal Employment Opportunity Commission ("EEOC") against Defendant. (The Charge is attached hereto as Exhibit "A").

5. On October 18, 2021, the EEOC issued a Right to Sue with respect to the Charge. (The Right to Sue is attached hereto as Exhibit "B").

6. Plaintiff received the Right to Sue on or about October 18, 2021.

7. Plaintiff has now filed her Complaint within ninety (90) days of receipt of the Right to Sue.

8. Plaintiff has exhausted all administrative remedies with respect to the Charge before filing her claims with this Court.

## PARTIES

9. Plaintiff is a citizen of the United States of America, she is over the age of nineteen (19) years, and a resident of the State of Alabama who is entitled to protection pursuant to the provisons of 29 U.S.C. § 2611(2); and, was at all times relevant an "employee" of Defendant, Wallace State Community College, within the meaning of 29 U.S.C. § 2611(3).

10. Defendant, George C. Wallace State Community College, is a public community college in the State of Alabama located at 801 Main Street NW, P.O. Box 2000, Hanceville, Alabama 35077, and is an "employer" within the meaning of 29 U.S.C. 2611(4) and Section 701(b) of Title VII.

11. Defendant was Plaintiff's employer during all times relevant to this Complaint.

## FACTS

12. In or around August 2014, Defendant first hired Plaintiff as a full-time nursing instructor.

13. On or around December 16, 2015 Plaintiff resigned.

14. In or around November 2016, Plaintiff was re-hired as a part-time nursing clinical instructor.

15. In or around October 2017, Defendant promoted Plaintiff to a full-time nursing instructor.

16. Defendant is a public agency.

17. During the following year, 2018, Plaintiff became pregnant.

18. In or around August 28, 2018, Plaintiff requested leave, pursuant to the FMLA, from October 1, 2018 through December 22, 2018 for the birth of her first child ("2018 FMLA Leave").

19. Defendant granted Plaintiff's 2018 FMLA Leave from October 1, 2018 through December 22, 2018.

20. In or around May 2019, Plaintiff received her Annual Performance Evaluation for the 2018-2019 year ("Performance Evaluation") from Defendant.

21. On Plaintiff's Performance Evaluation, Plaintiff received a low rating under "Instructional Effectiveness."

22. This was Plaintiff's first and only time that she was given a rating below "Meets Expectations" for any performance review category during her employment with Defendant.

23. Plaintiff, concerned with her low rating, arranged a meeting with her Supervisor, Deborah Hoover ("Hoover").

24. In this meeting, Plaintiff disclosed to Hoover her concerns about the rating affecting her tenure with Defendant.

25. Hoover advised Plaintiff that the negative performance rating likely was due to Plaintiff's pregnancy, stating that she had been "so hormonal" and "sick."

26. Hoover then notified Plaintiff that she should not have any issues getting tenure so long as she ***did not become pregnant again***.

27. However, Plaintiff became pregant for the second time in 2019.

28. In a meeting between Hoover and Plaintiff on or around July 31, 2019, Plaintiff informed Hoover of her pregnancy, in response, Hoover became flustered, defensive, and dismissed Plaintiff from the meeting.

29. Throughout Plaintiff's 2019 pregnancy, Hoover routinely made negative comments that indicated that she took issue with Plaintiff's pregnancy. For example, Hoover asked Plaintiff if she was "done having children now?" and stated that she could "always have a tubal."

30. In or around February 2020, Plaintiff requested leave pursuant to the FMLA from March 16, 2020 through June 1, 2020 for the birth of her second child ("2020 FMLA Leave").

31. At that time, Plaintiff had worked in excess of one thousand two hundred fifty (1,250) hours during the twelve (12) months prior to the requested start of her FMLA leave.

32. Additionally, Plaintiff was employed by Defendant for more than twelve (12) months prior to the start of her requested leave.

33. Defendant granted Plaintiff's 2020 FMLA Leave request.

34. However, prior to her 2020 FMLA Leave, Hoover made negative and disparaging comments about Plaintiff's inability to return to work after she "had so many children."

35. Additionally, Hoover made negative comments regarding Plaintiff's ability to handle the challenges that come with having "many children."

36. During Plaintiff's 2020 FMLA Leave, she attempted to return to work earlier than previously planned because she was concerned about her job security due to Hoover's comments.

37. However, Defendant denied Plaintiff's request to return to work earlier.

38. Accordingly, Plaintiff returned to work from the 2020 FMLA Leave on or about August 10, 2020.

39. Approximately three (3) days later, on or about August 13, 2020, Defendant terminated Plaintiff's employment.

40. Defendant's unlawful actions resulted in significant financial and emotional damage to Plaintiff.

## COUNT I- PREGNANCY DISCRIMINATION IN VIOLATION OF TITLE VII

41. Plaintiff is a woman and, therefore, a member of a protected class.

42. Plaintiff was, and is, a qualified employee, able to perform her job duties.

43. In or around the spring-time of 2018, Plaintiff learned that she was pregnant for the first time.

44. Defendant granted Plaintiff's 2018 FMLA Leave request from October 1, 2018 through December 22, 2018 for the birth of her first child.

45. Upon her return, Plaintiff received her 2018-2019 Performance Evaluation in which she received a low rating in "Instructional Effectiveness."

46. Plaintiff met with Hoover to discuss this rating, as it was the first and only instance where she was given a low rating.

47. At this meeting, Hoover advised Plaintiff that the negative performance rating likely was due to Plaintiff's pregnancy and that she "should not" have any issues getting tenue so long as she does not become pregnant again.

48. Plaintiff learned that she was pregnant for a second time in 2019.

49. On or about July 31, 2019, Plaintiff informed Hoover of her pregnancy.

50. Throughout Plaintiff's 2019 pregnancy, Hoover routinely made negative comments that indicated that she took issue with Plaintiff's pregnancy

51. Defendant granted Plaintiff's 2020 FMLA Leave request from March 16, 2020 through June 1, 2020 for the birth of her second child.

52. Prior to Plaintiff taking FMLA leave, Hoover regularly made offensive and disparaging comments about Plaintiff's ability to return to work and Plaintiff's ability to handle the challenges that come with having "many children."

53. Plaintiff returned to work from her 2020 FMLA Leave on or about August 10, 2020.

54. Approximately three days later, on or about August 13, 2020, Defendant terminated Plaintiff's employment.

55. The Pregnancy Discrimination Act ("PDA") is an amendment to Title VII of the Civil Rights Act of 1964. The PDA forbids discrimination based on pregnancy when it comes to any aspect of employment, including hiring, firing, pay, job assignments, promotions, layoff, training, fringe benefits, such as leave and health insurance, and any other term or condition of employment.

56. Defendant's decision to terminate Plaintiff was motivated by her pregnancy.

57. As a result of Defendant's conduct, Plaintiff has been deprived of income. The conduct described above also caused, and is still causing, Plaintiff emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and embarrassment.

## COUNT II- FMLA INTERFERENCE

58. Defendant is an employer as defined in the applicable provison of the FMLA, and was, in fact, Plaintiff's employer at all times relevant to this cause of action.

59. Plaintiff was an eligible employee under the applicable provisions of the FMLA.

60. Plaintiff worked more than one thousand two-hundred fifty (1,250) hours during the twelve months prior to the start of her 2020 FMLA Leave.

61. Additionally, Plaintiff was employed by Defendant more than twelve (12) months prior to the start of her requested 2020 FMLA leave.

62. Accordingly, Plaintiff properly notified Defendant of her 2020 FMLA Leave, which she started in or around March 2020, in order to give birth to her second child.

63. One (1) of the benefits to which an employee is entitled under the FMLA is the right to return to work.

64. Defendant granted Plaintiff's 2020 FMLA Leave from March 16, 2020 through June 1, 2020 to give birth to her second child.

65. However, after Plaintiff's second pregnancy, Plaintiff returned to work on or about August 10, 2020, wherein she was reinstated for three (3) days and subsequently terminated.

66. On or about August 13, 2020, Plaintiff's employment was terminated by Defendant.

67. Defendant interfered with Plaintiff's protected right to reinstatement upon her return to work after taking her 2020 FMLA Leave to give birth to her second child.

68. Defendant's interference with Plaintiff's rights under the FMLA was in violation of the FMLA, 29 U.S.C. § 2615(a)(1) where it "shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this title."

69. Defendant's actions in interfering with Plaintiff's right of reinstatement resulted in significant damage to Plaintiff.

## COUNT III- FMLA RETALIATION

70. Plaintiff engaged in statutorily protected conduct by again taking her 2020 FMLA leave in or around March 16, 2020 for the birth of her second child.

71. After Plaintiff's second pregancy, Plaintiff returned to work on or about August 10, 2020, wherein she was terminated approximately three (3) days later.

72. Defendant terminated Plaintiff on or about August 13, 2020 after she returned from her 2020 FMLA Leave.

73. Defendant unlawfully terminated Plaintiff's employment because she exercised her rights under the FMLA, which is statutorily protected conduct.

74. Defendant retaliated against Plaintiff by terminating her employment, in violation of the FMLA, U.S.C. §§ 2601, et. seq.

75. Defendant's actions in retaliating against Plaintiff resulted in significant damage to Plaintiff.

**WHEREFORE**, Plaintiff respectfully requests this Court grant to Plaintiff the following:

A. A permanent injunction enjoining Defendant, its officers, successors, assigns and all persons in active concert or participation with it, from engaging further in its retaliatory treatment of those employees who exercise their protected rights.

B. Back pay for lost income and any other compensatory damages;

C. reinstatement, or front pay if the Court finds reinstatement to be impracticable;

D. punitive damages in an amount to be determined by a jury;

E. a reasonable attorneys' fee;

F. Plaintiff's costs and expenses;

G. interest on all monies owed; and

H. any other relief the Court deems just and appropriate.

Respectfully submitted on this 18th day of January 2022.

*s/ Anthony D. Michel*
Anthony D. Michel (ASB-6809-O64M)
Attorney for Plaintiff, Leah Gann

**WRADY MICHEL & KING**
505 20th Street North, Suite 1650
Birmingham, Alabama 35203
Telephone: (205) 980-5700
Facsimile: (205) 994-2819

## JURY DEMAND

Plaintiff demands a trial by struck jury.

*s/ Anthony D. Michel*
Attorney for Plaintiff, Leah Gann

**DEFENDANT WILL BE SERVED VIA PROCESS SERVER AT THE FOLLOWING ADDRESS:**

Wallace Community College
801 Main Street NW
Hanceville, AL 35077

*s/ Anthony D. Michel*
Attorney for Plaintiff, Leah Gann